UNION BANK & TRUST COMPANY, NA v FARMWALD
DEVELOPMENT CORPORATION

Docket No. 100652. Submitted November 7, 1989, at Grand Rapids. Decided December 19, 1989.

Union Bank & Trust Company, N.A., provided financing to Farmwald Development Corporation in connection with the development of two residential subdivisions. To receive the funds, Farmwald executed several promissory notes in favor of Union Bank, each of which was secured by individual mortgages on the separate lots within the subdivisions. Farmwald and Union Bank subsequently entered into a cross-collateralization agreement whereby it was agreed that the promissory notes would be considered to be secured by all of the security agreements, guarantees, mortgages, pledge agreements and assignments made by Farmwald in favor of Union Bank. Farmwald experienced financial difficulties. Several of its subcontractors and suppliers, including Johnson Carpet, Inc., filed construction liens against some of the houses under construction. Union Bank commenced an action in Kent Circuit Court against Farmwald Development Corporation, Paul J. and Yvonne K. Farmwald (principal shareholders of Farmwald Development Corporation and guarantors of the corporation's loans from Union Bank), and the subcontractors and suppliers who had filed construction liens. Union Bank sought the foreclosure of construction mortgages on forty-two uncompleted houses. Johnson Carpet, which had also obtained and recorded second mortgages against two of the residential lots identified as 2741 and 2749 Rum Creek subsequent to the time Union Bank's individual mortgages on those properties were recorded, responded to Union Bank's complaint by filing various cross-claims and counterclaims seeking enforcement of both its construction liens and mortgages. The trial court, Robert A. Benson, J., appointed a special master to make findings and recommendations regarding the various construction liens. The court also appointed a receiver to take possession of the unfinished

REFERENCES

Am Jur 2d, Mortgages §§ 13, 14, 1383.
See the Index to Annotations under Mortgages; Subdivisions.

houses and oversee their completion. Johnson Carpet was awarded a judgment for foreclosure of its construction lien, which judgment was later satisfied in full. Union Bank and Farmwald Development Corporation agreed to a consent judgment whereby Farmwald executed a quitclaim deed conveying each of the individual lots to Union Bank. The deed expressly provided that Union Bank's mortgages were not discharged as a result of the merger of its mortgage interest and fee title. Union Bank began selling the individual lots to third-party purchasers. 2749 Rum Creek was sold to David Bullock, who obtained his purchase money mortgage from Union Bank. Union Bank filed a motion for the entry of a judgment of foreclosure on its mortgages. Johnson Carpet objected, challenging the validity and superiority of Union Bank's mortgages on 2741 and 2749 Rum Creek. The court entered a partial foreclosure judgment allowing the sale of all lots except 2741 and 2749 Rum Creek. The court thereafter rejected Johnson Carpet's claim and entered an order authorizing Union Bank to proceed to a foreclosure sale of 2741 and 2749 Rum Creek. Johnson Carpet appealed.

The Court of Appeals *held:*

1. Generally, when a first mortgagee subordinates his mortgage to a third mortgage, the first mortgage becomes subordinate to both the second and the third mortgages. In this case, there remains a factual issue as to whether Union Bank agreed to subordinate its first mortgage on 2749 Rum Creek to Bullock's mortgage (the third mortgage). A remand is therefore necessary to resolve the issue. If, on remand, it is determined than Union Bank subordinated the first mortgage to the third mortgage, then Johnson Carpet's mortgage, being the second mortgage, shall be superior to Union Bank's first mortgage.

2. Farmwald Development Corporation's conveyance of all its lots to Union Bank did not result in the merger of Union Bank's mortgage interests and fee title to the lots. Generally, when the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter. Here, however, the quitclaim deed from Farmwald to Union Bank expressly provided for a nonmerger of Union Bank's mortgage interest and fee title.

3. The issue whether the cross-collateralization agreement between Farmwald Development Corporation and Union Bank precludes Johnson Carpet from exercising any meaningful redemption rights as a junior mortgagee turns on whether Johnson Carpet had actual or constructive notice of the agreement. The record in this case does not indicate any findings

with regard to such notice. On remand, a determination as to notice shall be made.

4. Issues raised by Johnson Carpet with respect to the equitable doctrine of marshalling of assets, as it applies to the actions taken by Union Bank in satisfying Farmwald's debts, cannot be addressed by the Court of Appeals since no appeal was taken from the partial foreclosure judgment with respect to the other forty lots. Any decision relating to the marshalling of assets would necessarily affect each of the other forty lots.

Affirmed in part, reversed in part and remanded.

1. MORTGAGES — SUBORDINATION.

If a first mortgagee subordinates his mortgage to a third mortgage, the first mortgage becomes subordinate to both the second and the third mortgages.

2. MORTGAGES — MERGER OF ESTATES.

When the holder of a real estate mortgage becomes the owner of the fee, the former estate is generally merged in the latter; when it is to the interest of the mortgagee and it is his intention to keep the mortgage alive, there is no merger, unless the rights of the mortgagor or third persons are affected thereby; the intent is the controlling consideration in determining the question of merger.

3. MORTGAGES — CROSS-COLLATERALIZATION AGREEMENTS — THIRD PARTIES.

An agreement between parties to a promissory note whereby the parties agree that the promissory note shall be considered secured by all security agreements, guarantees, mortgages, pledge agreements and assignments made by the debtor in favor of the creditor is not effective as to a third party who subsequently becomes a second mortgagee on property already pledged as security on the loan between the parties to the promissory note in the absence of actual or constructive notice of the agreement to the second mortgagee.

*Varnum, Riddering, Schmidt & Howlett* (by *Benham R. Wrigley, Jr., Nyal D. Deems* and *Thomas A. Hoffman*), for Union Bank & Trust Company, N.A.

*Visser & Bolhouse* (by *Donald R. Visser*), for Johnson Carpet, Inc.

Before: MAHER, P.J., and HOLBROOK, JR., and SAWYER, JJ.

PER CURIAM. This is an appeal by defendant, Johnson Carpet, Inc., from a circuit court order determining various substantive and priority issues respecting multiple mortgage interests in the same residential real property. We affirm in part, reverse in part and remand for further proceedings.

This action arose from the financial failure of Farmwald Development Corporation in connection with its development of two residential subdivisions. Farmwald financed the cost of the subdivision development through plaintiff, Union Bank & Trust Company. In exchange for funds advanced, Farmwald executed several promissory notes in favor of Union Bank, each of which was secured by individual mortgages on the separate lots within the subdivisions. Personal guarantees were also obtained from individual defendants Paul J. Farmwald and Yvonne K. Farmwald.

On March 12, 1984, Farmwald and Union Bank entered into an agreement providing for the cross-collateralization and cross-default of all outstanding loans and any subsequent loans that may come into being between the parties (hereafter cross-collateralization agreement). This agreement provided, in part:

> 3. *Cross-Collateralization and Cross-Default.* Each of the promissory notes issued by Union Bank to Farmwald shall be considered to be secured by all of the security agreements, guarantees, mortgages, pledge agreements, assignments and any other agreements (hereinafter cumulatively referred to as security documents) from Farmwald to Union Bank. . . . The loan obligations of Farmwald to Union Bank as outlined

above, together with any further or other amounts which Union Bank has loaned, or shall loan, to Farmwald under those agreements, or any other outstanding or subsequent agreements, shall all be secured by the property listed in each of the security documents designated above as well as under any other security documents which Union Bank has received, or may receive, from Farmwald.

After Farmwald experienced financial difficulties, Union Bank commenced an action in September, 1984, seeking, among other relief, the foreclosure of construction mortgages on forty-two uncompleted houses. Included as defendants in the action were several subcontractors and suppliers who had filed construction liens against some of the houses.

Johnson Carpet was one of the named construction lien claimants. In addition to having filed several construction liens, however, Johnson Carpet had also obtained second mortgages against two of the residential lots identified as 2741 and 2749 Rum Creek. These mortgages were recorded on August 17, 1984, subsequent to the time Union Bank's individual mortgages on each of these properties were recorded.

Johnson Carpet responded to Union Bank's complaint by filing various cross claims and counterclaims seeking enforcement of both its construction liens and mortgages.

In light of the number of liens and properties involved, a special master was appointed to make findings and recommendations regarding the validity and amount of the various construction liens. In addition, a receiver was appointed to take possession of the unfinished houses and oversee their completion.

Based upon the special master's findings, John-

son Carpet obtained a judgment for foreclosure of its construction lien on October 29, 1985, in the amount of $36,254.01, together with interest and an award of $11,117.21 for costs and attorney fees. This judgment was satisfied in full on February 17, 1986.

During the pendency of the special master's investigation, Union Bank and Farmwald reached a settlement which was reduced to a consent judgment on April 26, 1985. The consent judgment (1) granted Union Bank its requested relief as to counts I, II, III and V of their complaint, (2) dismissed a Farmwald counterclaim against Union Bank, and (3) withdrew all Union Bank claims against Paul and Yvonne Farmwald, individually, based upon their personal guarantees.

Pursuant to the consent judgment, Farmwald executed a quitclaim deed conveying each of the individual lots to Union Bank. This deed, however, contained express language to the effect that Union Bank's mortgages were not being discharged as a result of the subsequent merger of both the mortgage interest and fee title in Union Bank.

Union Bank then began selling the individual lots to third-party purchasers, subject to the non-discharged mortgages. Because the instant action was still pending, however, and because Union Bank's mortgages remained outstanding, Union Bank entered into separate agreements with the purchasers setting forth the manner in which Union Bank would transfer title to the property and discharge the mortgages when the litigation was completed. Further, under these agreements, Union Bank agreed to subordinate its existing mortgage to any purchase money mortgage obtained by the purchasers.

In June, 1985, Union Bank moved for entry of a judgment of foreclosure on its mortgages. Johnson

Carpet objected to the proposed judgment, challenging both the validity and superiority of Union Bank's mortgages on the 2741 and 2749 Rum Creek properties and contending that Union Bank was required to marshal its assets.

The matter was resolved with the entry of a partial judgment of mortgage foreclosure on February 4, 1986, which authorized the foreclosure and sale of all lots except 2741 and 2749 Rum Creek. The court determined the total amount owing to Union Bank pursuant to the various notes, obligations and cross-collateralization agreement to be $4,323,183.05.

A hearing was thereafter conducted concerning the validity and priority of Union Bank's mortgage on the two Rum Creek properties. In an opinion dated February 11, 1987, the court rejected Johnson Carpet's claims that Union Bank's mortgages were either invalid or inferior to its own. An order was then entered authorizing Union Bank to proceed to a foreclosure sale as to these two lots. Johnson Carpet's motion for rehearing was denied. From this order, Johnson Carpet appeals as of right.

As its first issue on appeal, Johnson Carpet claims the lower court erred by failing to find that its mortgage on the 2749 Rum Creek property was superior to that of Union Bank. Although the Johnson Carpet mortgage was clearly recorded after Union Bank's, Johnson Carpet bases its claim on the existence of an alleged subordination agreement between Union Bank and David Bullock, a third-party purchaser of the property. This agreement, a copy of which Johnson Carpet supplied to the lower court, provided in pertinent part:

3. *Subordination.* Concurrent with the closing of

the mortgage given by the Purchaser to Union Bank with this Agreement, Union Bank shall subordinate its Farmwald mortgage on the Premises to the mortgage given by the Purchaser to Union Bank on this date and the Farmwald mortgage shall operate as a second lien on the Premises junior to the mortgage given by the purchaser to Union Bank.

This subordination clause was similar to that contained in other agreements between Union Bank and third-party purchasers of other properties in the subdivisions. Union Bank claims that, because junior mortgages existed on the two Rum Creek lots, they were unable to use the same agreement that was used for the other lots. Accordingly, Union Bank provided the lower court with a copy of a different agreement alleged to have been operative between it and Bullock that did not contain the subordination language.

In its opinion, the lower court based its finding of no subordination upon the absence of any subordination agreement between Union Bank and Bullock. When, on rehearing, Johnson Carpet alerted the court to the existence of the second agreement, the court recognized that a factual dispute existed as to which of the two agreements was controlling. The court admitted it had forgotten there were two separate agreements at the time it issued its opinion. Nevertheless, it did not change its ruling.

The general rule with respect to subordination is that, if a mortgagee subordinates his mortgage to a third mortgage, the first mortgage becomes subordinate to both the second and the third mortgage. See 59 CJS, Mortgages, § 218, p 288. Under this rule, if Union Bank subordinated its mortgage (first mortgage) to Bullock's mortgage (third mortgage), then its mortgage would have also been

subordinated to the Johnson Carpet mortgage (second mortgage).

Our problem on appeal is that we are faced with two conflicting agreements. One provides for subordination and the other does not. Each of the agreements is signed by both Union Bank and Bullock, and is undated. If the agreement with the subordination clause is found to be controlling, then, under the above rule, Union Bank's mortgage would have been subordinated to the mortgage of Johnson Carpet. If the nonsubordination agreement is controlling, however, then Union Bank's mortgage would be superior because it was recorded first. There was no testimony taken nor findings rendered concerning the reason why two conflicting agreements exist or which one is controlling. Because this determination is dispositive to the outcome of this issue, we are required to remand this case to the trial court in order that a factual determination can be made as to which agreement is controlling.

To avoid any confusion, we emphasize that our ruling on this first issue is limited solely to the 2749 Rum Creek property. Johnson Carpet has not provided any evidence of a subordination agreement with respect to the 2741 Rum Creek property, and the superiority of Union Bank's mortgage on this lot has already been stipulated to. Therefore, the lower court's determination of priority with respect to the 2741 Rum Creek lot is affirmed.

Next, Johnson Carpet claims that, under the merger doctrine, Union Bank's mortgage interests in both Rum Creek lots were extinguished and discharged by Farmwald's prior conveyance of the mortgaged premises to Union Bank.

In *Clark v The Federal Land Bank of Saint Paul,* 167 Mich App 439, 444; 423 NW2d 220

(1987), this Court, quoting from *Titus v Cavalier,*
276 Mich 117, 120-121; 267 NW 799 (1936), dis-
cussed the doctrine of merger of estates:

> There is no doubt about the general rule that
> when the holder of a real estate mortgage becomes
> the owner of the fee, the former estate is merged
> in the latter. This rule is, however, subject to the
> exception that when it is to the interest of the
> mortgagee and is his intention to keep the mort-
> gage alive, there is no merger, unless the rights of
> the mortgagor or third persons are affected
> thereby. . . .
> "It is the well-established rule that in determin-
> ing the question of merger, that the intent is the
> controlling question. If it be for the interest of him
> in whom the estates are united to keep the mort-
> gage alive, the law will not imply an intent to
> merge." *Anderson v Thompson,* 225 Mich 155, 159
> [195 NW 689 (1923)].

The conveyance from Farmwald to Union Bank
contained the following language:

> The interests of the grantee as the owner of the
> mortgages described on the attached Exhibit A
> recorded in the offices of the Kent County Register
> of Deeds, which constitute first liens on the Prem-
> ises, *shall not be deemed to be merged into the fee
> acquired by grantee under this deed, nor shall the
> liens of the mortgages be extinguished.* [Emphasis
> added.]

The conveyance in this case clearly reflects the
parties' intent that the mortgage not merge with
the fee title. In addition, because other encum-
brances existed on the properties, it was in the
interest of Union Bank to keep its mortgages alive.
Finally, Johnson Carpet's rights were not affected
by the intention to keep the mortgage alive inas-
much as it was already aware that its mortgage

was junior to Union Bank's mortgage. See *Clark,
supra* at 445. Therefore, we find no error with the
lower court's determination that a merger did not
occur.

Johnson Carpet also claims the Farmwald con-
veyances were void because they were not sup-
ported by consideration and constituted an illegal
clogging of title. This issue was never raised below
nor addressed by the trial court. Accordingly, it
has not been preserved for appeal. *Muilenberg v
The Upjohn Co,* 169 Mich App 636, 644; 426 NW2d
767 (1988), lv den 432 Mich 889 (1989). In any case,
we are unable to determine how Johnson Carpet's
position would be improved if the conveyances
were to be set aside.

Johnson Carpet also claims the court erred
when it determined there was one single indebted-
ness based upon the cross-collateralization agree-
ment. Johnson Carpet contends the court should
have found the existence of forty-two separate
debts, secured by forty-two separate mortgages.
The importance of this characterization is that, if
the mortgages on either the 2741 or 2749 Rum
Creek properties are deemed to secure the entire
indebtedness, then Johnson Carpet could effec-
tively be precluded from exercising any meaning-
ful redemption rights as a junior mortgagee if
Union Bank were to bid the entire indebtedness
against these lots.

While we do not dispute that Union Bank could
properly cross-collateralize its various loans, we do
agree that any attempted cross-collateralization of
other debts would not be binding against third
parties absent actual or constructive notice of the
cross-collateralization.

Although Union Bank recorded the cross-collat-
eralization agreement prior to the time Johnson
Carpet obtained its mortgages on the 2741 and

2749 Rum Creek lots, our review of the agreement reveals no identification to these individual lots. Thus, the recording of this agreement would not have provided Johnson Carpet with notice that the two lots were intended to serve as collateral for other loans. In the absence of any notice, Johnson Carpet cannot be bound by the cross-collateralization agreement. See *Lakeside Associates v Toski Sands,* 131 Mich App 292, 298; 346 NW2d 92 (1983).

While we are not aware of any other recorded document purporting to provide notice of any cross-collateralization, we note that the issue of notice, whether actual or constructive, was never specifically inquired into by the trial court. Instead, the court merely found that Union Bank could properly cross-collateralize its various loans. We believe that a determination of whether Johnson Carpet had notice of the cross-collateralization agreement is necessary in order to appropriately resolve this issue. Therefore, this determination shall also be made on remand.

Finally, Johnson Carpet raises issues relating to marshalling of assets and application of sale proceeds. Johnson Carpet claims that, under the equitable doctrine of marshalling, Union Bank should be required to first satisfy Farmwald's debt from the sale of property which does not secure their junior mortgage and that proceeds obtained from the sale of the other lots prior to a foreclosure sale must be applied against any outstanding indebtedness. *Southworth v Parker,* 41 Mich 198, 200; 1 NW 944 (1879). We agree with Union Bank that we are presently precluded from deciding these issues.

On February 4, 1986, the trial court entered a partial judgment of mortgage foreclosure directing that all lots, excepting 2741 and 2749 Rum Creek,

be sold in individual parcels by public sale. Prior to the entry of this judgment, Johnson Carpet had filed objections wherein both marshalling issues and issues concerning the validity and superiority of Union Bank's mortgages in the 2741 and 2749 Rum Creek properties were raised.

Although the court agreed to except the two Rum Creek properties from the foreclosure judgment pending a future hearing addressing the specific arguments relating to these properties, it declined to order the marshalling of assets. At the future hearing, the issue of marshalling was neither briefed nor argued by either of the parties.

Any decision relating to Johnson Carpet's marshalling and application of proceeds arguments would necessarily affect each of the other forty individual lots. The partial foreclosure judgment served as a final order resolving all issues pertaining to the other forty lots. No appeal was filed from this judgment. Under these circumstances, we are precluded from addressing the issue in this appeal. In any case, we note that marshalling may be invoked only where the interest of the senior mortgagee would not be harmed, *Southworth, supra* at 200, a fact we are not convinced has been established.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.