CAMPBELL *v.* EVANS.

1. INFANTS—RECOMMENDATIONS OF FRIEND OF THE COURT.
   A circuit court must test the recommendation of the friend
   of the court as to the custody of a child by whatever reason-
   able means may be made available, especially where the rec-
   ommendation is challenged by the mother of a young child
   from whom she is separated as result of recommendation
   claimed to be misleading and inaccurate.

2. AMICUS CURIAE—DELEGATION OF POWERS.
   The trial judge may not delegate to the friend of the court
   the power to make ultimate decision in a case involving
   the exercise of discretion in a child custody case although
   the office of friend of the court may be a great aid to the
   administration of justice, if the office is not misused.

3. INFANTS—CUSTODY—FRIEND OF THE COURT—DISCRETION OF COURT.
   Child custody case is remanded so that trial court may have a
   full hearing on the merits before making final determination
   on remarried mother's petition for rehearing of denial of
   her petition for habeas corpus seeking return of her child
   from mother and stepfather of her former husband who was
   not the father of the child, where the testimony referred to
   in petition for rehearing was for the purpose of showing errors
   and omissions made by the friend of the court in making rec-
   ommendations which had been followed by the circuit court
   in denying writ without reading transcript.

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted June 2, 1959.   (Calendar No. 47,738.)
Decided November 25, 1959.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3]  27 Am Jur, Infants § 105 *et seq.*
[1, 2]  2 Am Jur, Amicus Curiae § 4 *et seq.*

Habeas corpus by Lelar Mae Bartlett Campbell against Jeff Evans and Dora Evans to regain custody of child. Petition denied and writ dismissed on basis of report and recommendation of friend of the court. Rehearing denied. Plaintiff appeals. Reversed and remanded.

*Nat Gursten,* for plaintiff.

VOELKER, J. The appellant in this case is the mother of the child which was the subject of the controversy below. Appellant was 15 or possibly 16 years old and unwed when the child was born. Upon her release from the hospital the respondents Jeff and Dora Evans accepted her and the child into their home. She thereafter married Dora Evans' son, but no claim is advanced by anyone that he was the father of the child, and it clearly appears that he was not. Jeff Evans is an uncle of the appellant. Friction developed (the causes of which were disputed), and the child's mother and Jeff Evans frequently quarreled. After some 9 months of this the mother left the Evans' home. The Evans refused to surrender the child and insisted before the referee below that the mother abandoned it, and moreover still owed them money for its keep. The mother claims she did not ever abandon the child but was physically assaulted and forced to leave the Evans' house by the continued physical and mental cruelty of Mr. Evans, and moreover that she was penniless when she left. The child is still in the physical custody of the Evans. Eventually the mother was divorced from Dora Evans' son and married her present husband.

On August 31, 1956, appellant filed a petition for a writ of habeas corpus in the circuit court for Wayne county, seeking the return of her child. As noted, she had in the meantime divorced her first husband

and married another. The circuit judge referred her petition to the friend of the court who, following a hearing, on June 28, 1957 (nearly 10 months after the petition was filed), filed a report recommending denial of the mother's petition. To this recommendation the mother objected, which formal objections were heard in circuit court on July 9, 1957. No testimony was taken at the hearing on the objections and on August 27, 1957, following oral argument, the court followed the recommendation of the friend of the court and denied the petition and dismissed the writ.

The child's mother then sought a rehearing below of her objections to the noted recommendation. To this end she ordered the rather lengthy transcript of the proceedings had before the referee of the friend of the court and so informed the circuit court so that the judge might wait and read it and thus more readily determine the errors and omissions she claimed were made by the friend of the court. The circuit judge ignored the offered transcript, took no further testimony on his own, and on January 15, 1958 (over 6 months after the original objections were filed), denied the petition for rehearing. This appeal has resulted. The respondents have not chosen to favor us with a brief.

In his order denying the petition for rehearing the trial judge stated that no new matter had been presented to him that warranted the court's changing its original ruling. On that question we need not pass. It is sufficient to observe that our study of the transcript reveals a wealth of material which in our opinion should seriously have been considered by the chancellor before reaching his final decision on the petition for rehearing. In general the fact that the mother was unwed and so young when her child was born seems unduly to have preoccupied and persuaded the referee.

With the multitude of cases coming before our own Court, we are well aware that busy judges in other courts must frequently rely to a great extent upon the assistance of their various lieutenants. In a case involving the custody and well-being of a young child separated from its mother, however, where the recommendation of the friend of the court is challenged as misleading and inaccurate, we think that at the very least it is incumbent upon the court to test that recommendation by whatever reasonable means may be made available to him. Especially should this be so when the recommendation has the effect of denying a natural mother the custody of her own child as against the claims of strangers. Here the court was offered a transcript of the very testimony upon which the friend of the court had based his questioned recommendation. Short of ordering an entirely new hearing before himself (which we think under these circumstances he might still better have done), we doubt that the circuit judge could have found a better test of the recommendation made to him than by perusing the actual testimony upon which that questioned recommendation was based.

The office of the friend of the court as employed by the Wayne circuit judges can be, if not misused, a great aid to the administration of justice. In fact that busy court would doubtless be paralyzed without its valuable services. It is important to bear in mind, however, that the friend of the court is not the judge (which we suspect he would be the first to concede), and that his recommendations are never to be followed blindly. They are a helpful time-saving crutch and no more. The responsibility for the ultimate decision and the exercise of judicial discretion in reaching it still rests squarely upon the trial judge. These grave prerogatives he may never delegate to others.

Much of what we said and held in *Bowler* v. *Bowler,* 351 Mich 398, applies equally to this case. On page 407 we there said:

"We believe that circuit courts have no more important or more difficult hearing function than that of careful handling of custody problems involving minor children. See Botein, Trial Judge, ch 17, p 270. While under statutory authority, they are authorized to make use of the friend of the court for detailed home investigation, and to make use of friend of the court referees for preliminary hearings, the circuit judge cannot delegate his ultimate responsibility in contested cases for the hearing of evidence and the determination of issues."

These observations were made in a case involving a custody dispute between the natural parents. We think they are all the more applicable when the dispute is between a natural parent and strangers, and especially when the questioned recommendation is against the claim of the parent. This alone should have alerted the circuit court to use particular care and avail himself of all reasonable means to make sure he was deciding right. Instead he did not, and this young mother has forever been denied her own child during its most formative and impressionable years. Nothing anyone can now do can right that wrong, if wrong it was.

We must conclude that the trial court's denial of the petition for a rehearing without first considering the proffered transcript was clearly an abuse of discretion. The most casual reading of it would in our opinion have raised grave doubts as to the legal soundness and societal desirability of its accompanying recommendations and the dubious rationale on which they appear to be based. Unwed mothers are not necessarily the worst mothers in the world, nor are young children yet helpless chattels who can be held for a lien for their board, like grazing cattle.

The order below is reversed and the cause remanded for a full rehearing in circuit court on the merits. We can do no more at this juncture unless we ourselves are to act peremptorily upon an inadequate and now ancient record. Since the matter must be reheard we take the liberty to suggest that it must be a strong case indeed that will warrant denying a reasonably decent mother the custody of her child against the asserted claims of strangers. Since it appears that the mother may have wrongfully been denied the custody of her growing child for many years (a good part of it apparently due to what we may charitably call procedural inertia), we suggest that the hearing and decision on this matter proceed with more than ordinary dispatch. We further wish to be kept informed through our clerk of the progress and disposition of this case.

Reversed and cause remanded for rehearing on petition for habeas corpus, with costs to appellant.

BLACK and KAVANAGH, JJ., concurred with VOELKER, J.

CARR, J., concurred in result.

EDWARDS, J. (*concurring*). I concur with Mr. Justice VOELKER's result and indeed with his opinion in its entirety except for the 3 paragraphs which precede the last sentence.

We are reversing this case because we feel a full hearing is warranted. I do not think we should shape the decision therein. The chancellor will have to weigh 8-1/2 years of maternal abandonment without any effort to recover custody and 11 years of the child's life lived with defendants in what may appear to be satisfactory adjustment, against those portions

of the record which Mr. Justice VOELKER has cited. His will not be a simple task.

DETHMERS, C. J., and KELLY and SMITH, JJ., concurred with EDWARDS, J.