OAKLAND COUNTY PROSECUTOR v BECKWITH

Docket No. 213447. Submitted March 14, 2000, at Detroit. Decided September 15, 2000, at 9:15 A.M. Leave to appeal sought.

The Oakland County Prosecutor brought an action in the Oakland Circuit Court against Stuart Beckwith and others, asserting nearly three hundred claims under the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.* Over the plaintiff's objection, the court, Fred M. Mester, J., entered an order appointing Geoffrey L. Silverman special master to assist the court and ordering the plaintiff to pay for a portion of the special master's services. The master's proposed findings of fact and conclusions of law were to be recommendations to the trial court. The Court of Appeals denied the plaintiff's application for leave to appeal from the order in an unpublished order entered August 28, 1997 (Docket No. 203355). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 458 Mich 867 (1998).

The Court of Appeals *held*:

The Court of Appeals must follow the precedentially binding decision in *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116 (1996), pursuant to MCR 7.215(H)(1), and reverse the order of the trial court. The *Carson* Court found an improper delegation of judicial authority under facts that are indistinguishable from those of this case. Were it not for *Carson*, the trial court's order would be affirmed on the bases that the circuit court possesses the requisite, albeit implicit, authority to appoint a special master as long as the assigned duties do not unduly intrude on the exclusive domain of the court to perform judicial functions and that there was no delegation of judicial authority in this case in view of the oversight and power of review retained by the trial court.

Reversed.

J. B. SULLIVAN, J., concurring with the result reached by the majority, wrote separately to state that *Carson* was not wrongly decided. In the present circumstances, the trial court delegated to the special master some of its judicial functions. *Carson* clearly

and correctly held that the circuit court may not delegate judicial
functions.

*David G. Gorcyca,* Oakland County Prosecuting
Attorney, *Daniel L. Lemisch,* Chief, Appellate Division, and *John S. Pallas,* Assistant Prosecuting Attorney, for the plaintiff.

*Weisman, Trogan, Young & Schloss, P.C.* (by *Martin C. Weisman* and *Lita Masini Popke*), for special master Geoffrey L. Silverman.

Before: GRIFFIN, P.J., and HOLBROOK, JR., and J. B.
SULLIVAN* , JJ.

GRIFFIN, P.J. This case is before us pursuant to a
Supreme Court order remanding the case for consideration as on leave granted. See 458 Mich 867 (1998).
On appeal, plaintiff challenges the trial court's order
directing the Oakland County Prosecutor to pay a
portion of a special master's fees, specifically $698.70
for services rendered. We agree with plaintiff that
*Carson Fischer Potts & Hyman v Hyman,* 220 Mich
App 116, 119-121; 559 NW2d 54 (1996), is controlling
and compels reversal of the trial court's order
directing the prosecutor to pay a portion of the special master's fees. However, we follow the precedential effect of *Carson* only because we are compelled
to do so pursuant to MCR 7.215(H)(1). Were it not
for the prior precedentially binding decision, we
would affirm. MCR 7.215(H)(2).

---

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

I

Plaintiff brought the present action asserting nearly three hundred claims under the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.* Over plaintiff's objection, the court appointed a special master to assist the court in this complex litigation. See the appendix to Judge SULLIVAN's concurring opinion in this matter: Order Appointing Special Master. Later, the trial court ordered plaintiff to pay for a portion of the special master's services. On appeal, plaintiff argues that the trial court's order appointing the special master was unlawful and, thus, the order directing payment for the special master's services must be reversed. We review questions of law de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998); *Kern v Blethen-Coluni*, 240 Mich App 333, 341-342; 612 NW2d 838 (2000).

Resolution of the issue at hand is governed by this Court's prior decision in *Carson, supra,* in which the trial court appointed an expert witness pursuant to MRE 706[1] to " 'make findings of fact, conclusions of law and a final recommendation and proposed judg-

---

[1] MRE 706 states in pertinent part:

(a) *Appointment.* The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall

ment as to the disposition of [the] matter . . . .' " *Carson, supra* at 118. The expert witness was given the authority to hire a certified public accountant to assist him and, in addition, was given the duties

> to review all motions and submit findings of fact to the court before the scheduled hearing date, to require the production of evidence, to issue subpoenas through the court, to conduct and regulate miscellaneous proceedings, to examine documents and witnesses, and to prepare final findings of fact and recommendations for judgment. The order permitted the parties to file written objections to the final findings and recommendations and permitted the court to adopt the expert's recommendation and judgment, to modify the recommendation, or to refer the recommendation to the expert with further instructions. [*Id.* at 121.]

On appeal, the defendant argued the trial court did not have the authority to appoint such experts under either MRE 706 or the Michigan Constitution because the assigned duties and responsibilities essentially made them special masters rather than expert witnesses. *Carson, supra* at 118-119. Citing Const 1963, art 6, §§ 1 and 27,[2] the *Carson* Court agreed, explaining:

---

be subject to cross-examination by each party, including a party calling the witness.

[2] Const 1963, art 6, § 1 provides:

The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

Const 1963, art 6, § 27 states: "The supreme court, the court of appeals, the circuit court, or any justices or judges thereof, shall not exercise any power of appointment to public office except as provided in this constitution."

Although the Supreme Court is empowered by the Michigan Constitution to authorize persons who have been elected and have served as judges to perform judicial duties for limited periods or specific assignments, Const 1963, art 6, § 23, there are no constitutional or statutory authorities permitting a circuit court judge the power to appoint a retired judge or any other person to sit as a court in a civil action. *Brockman v Brockman,* 113 Mich App 233, 237; 317 NW2d 327 (1982). Rather, Const 1963, art 6, § 27 specifically prohibits such action. In *Brockman,* this Court held that a Wayne Circuit Court judge was without constitutional or statutory authority to appoint a former circuit court judge to sit as the court and try the matter. *Id.,* p 237.

*     *     *

We agree with defendant that there is no constitutional authority for the trial court to delegate specific judicial functions to an "expert witness." It is within the peculiar province of the judiciary to adjudicate upon and protect the rights and interests of the citizens and to construe and apply the laws. . . . Thus, the trial court could not delegate its functions of making conclusions of law, reviewing motions, requiring the production of evidence, issuing subpoenas, conducting and regulating miscellaneous proceedings, examining documents and witnesses, and preparing final findings of fact. Although this is what the trial court's order purports to do, the court cannot appoint an expert witness to perform judicial functions. Accordingly, the trial court was without constitutional authority to delegate its specific judicial power to an expert witness. [*Carson, supra* at 120-122.]

The *Carson* Court further held that the trial court's order appointing an expert witness "exceeded the authority implicit in MRE 706 by requiring the expert to perform duties outside the scope of the duties of an expert witness and within the purview of the court." *Id.* at 123-124.

II

In the present case, the special master argues that *Carson* is distinguishable. We disagree and conclude the differences between the cases are immaterial. In *Carson*, the trial court cited MRE 706 as authority for the appointment of the special master; in this case the court relied on MCR 1.105. However, neither the rule of evidence nor the court rule expressly authorizes such an appointment. Most importantly, in both cases, the master's proposed findings of fact and conclusions of law were mere recommendations to the trial court: "If the expert's *recommendation* was adopted, the trial court would enter judgment in the same manner as if the action had been tried by the court." *Carson, supra* at 123 (emphasis added). Further, the order in *Carson*, like the order herein appointing the special master, "permitted the parties to file written objections to the final findings and recommendations and permitted the court to adopt the expert's recommendation and judgment, to modify the recommendation, or to refer the recommendation to the expert with further instructions." *Id.* at 121. Consequently, these similarities bind our disposition of the present matter to the result obtained in *Carson, supra*.

However, were we not compelled to follow *Carson* by virtue of MCR 7.215(H), we would hold the circuit court possesses the requisite, albeit implicit, authority to appoint a special master as long as the assigned duties do not unduly intrude on the exclusive domain of the court to perform judicial functions.

III

The circuit court is the trial court of general juris-
diction. It possesses the broad powers provided by
MCL 600.601(1); MSA 27A.601(1):

> The circuit court has the power and jurisdiction:
>
> (A) Possessed by courts of record at the common law, as
> altered by the state constitution of 1963, the laws of this
> state, and the rules of the supreme court.
>
> (B) Possessed by courts and judges in chancery in
> England on March 1, 1847, as altered by the state constitu-
> tion of 1963, the laws of this state, and the rules of the
> supreme court.
>
> (C) Prescribed by the rules of the supreme court.

Before the *Carson* decision, our circuit courts
appointed special masters to assist them when the
circumstances of the cases so justified. See, e.g.,
*O'Connor v Vander Veen*, 253 Mich 77; 234 NW 101
(1931), *Skinner v Lucas*, 68 Mich 424; 36 NW 203
(1888), *Chittenden v Witbeck*, 50 Mich 401; 15 NW
526 (1883), *FMB-First Michigan Bank v Bailey*, 232
Mich App 711; 591 NW2d 676 (1998), *O'Dess v Grand
Trunk W R Co*, 218 Mich App 694; 555 NW2d 261
(1996), *Union Bank & Trust Co, NA v Farmwald
Development Corp*, 181 Mich App 538; 450 NW2d 274
(1989), *Eyde v Eyde*, 172 Mich App 49; 431 NW2d 459
(1988), and *Harper Creek School Dist v LeRoy Twp
Supervisor*, 146 Mich App 515; 382 NW2d 172 (1985).
While at the present time the Michigan Court Rules of
1985 do not contain an express provision either
authorizing or forbidding the appointment of a special

master by the circuit court,[3] in our view, the court possesses such inherent authority. As long as the court's judicial function has not been abdicated, we would hold there is no express or implied prohibition to the appointment of a special master by the circuit court.

Our position was shared by the Supreme Court, although in dicta, in *Detroit Trust Co v Mason*, 309 Mich 281, 309-310; 15 NW2d 475 (1944):

> Plaintiff on appeal further contends that the court had no right to appoint a friend of the court to attempt to obtain a loan from the R. F. C. Mortgage Corporation or, later, to solicit bids higher than the Jefferson Standard proposal in order to obtain more for the bondholders. . . . There is authority for the appointment and payment of a friend of the court who aids in the performance of certain labors and examinations. See 3 CJS p 1048; 2 Am Jur p 679[4]; *In re St Louis Institute of Christian Science*, 27 Mo App 633 [1887]; *Mumma's Estate*, 2 Pa Dist 592 [Orphans' Ct, 1893]; *State v Gorman*, 171 Ind 58 (85 NE 763) [1908]. The question has not been frequently passed upon. We find no authority to the contrary.

---

[3] For the sake of uniformity, we urge our Supreme Court to adopt a special master court rule similar to FR Civ P 53. We note that in response to *Carson, supra*, the representative assembly of the State Bar of Michigan proposed a special discovery master court rule, MCR 2.317. To date, however, the Supreme Court has taken no action on the state bar's recommendation.

[4] 2 Am Jur, Amicus Curiae, § 2, p 679, provides: The term [amicus curiae] includes persons, whether attorneys or laymen, who interpose in a judicial proceeding to assist the court by giving information or otherwise, or who conduct an investigation or other proceeding on request or appointment therefor by the court. See also *Id.*, § 8, p 682:

> Compensation. Ordinarily, no compensation is sought for at the hands of the court by an amicus curiae. Nevertheless, it has been held that the court has inherent power to award compensation to an amicus curiae, to be paid by the party whose acts made his appearance necessary for the information of the court.

Similarly, in *Campbell v Evans*, 358 Mich 128, 131; 99 NW2d 341 (1959), our Supreme Court acknowledged:

> With the multitude of cases coming before our own Court, we are well aware that busy judges in other courts must frequently rely to a great extent upon the assistance of their various lieutenants. . . .
>
> . . . In fact that busy court would doubtless be paralyzed without its valuable services. It is important to bear in mind, however, that the friend of the court is not the judge (which we suspect he would be the first to concede), and that his recommendations are never to be followed blindly. They are a helpful time-saving crutch and no more. The responsibility for the ultimate decision and the exercise of judicial discretion in reaching it still rests squarely upon the trial judge. These grave prerogatives he may never delegate to others.

*Detroit Trust Co, supra,* and *Campbell, supra,* are both annotated in the current 3A CJS, Amicus Curiae, § 6, pp 428-429, which states in pertinent part:

> *Appointment by court.* In a proper case an amicus curiae may be appointed to aid the court by the performance of certain labors and examinations which are necessary to guide the court to a proper conclusion. However, it is improper to appoint an amicus curiae to assume the judicial functions of the judge, to assume a partisan attitude, or to press objections dictated by the court.

See also 3A CJS, Amicus Curiae, § 14, pp 437-438:

> [I]t has been held that although there may be no express statutory direction for the allowance of compensation to an amicus curiae, it is within the power of the court to allow him a reasonable compensation for his labors, and where an amicus curiae is appointed by the court to perform certain labors which may be necessary to aid the court with respect to some private litigation pending before it, he has

the right to be awarded compensation for the services he may render in such capacity.

Again in dicta, the Supreme Court discussed the role of special masters in *Rockwell v Crestwood School Dist Bd of Ed*, 393 Mich 616, 644-645; 227 NW2d 736 (1975):

> A special master, receiver or monitor exercises the powers conferred upon him subject to the judge's power to substitute his own independent judgment at any time for the judgment of the special master, receiver or monitor . . . .

In addition to the above authority, we note the Supreme Court has appointed nonjudicial experts to assist it in its decision making. Specifically, in *In re Apportionment of State Legislature—1982*, 413 Mich 96, 143; 321 NW2d 565 (1982), the Supreme Court appointed Bernard J. Apol, former Director of Elections, to supervise the drawing of legislative redistricting and reapportionment. Further, in *Durant v State Bd of Ed*, 424 Mich 364, 394; 381 NW2d 662 (1985), and *Durant v Michigan*, 456 Mich 175, 185-186; 566 NW2d 272 (1997), the Supreme Court suggested the Court of Appeals appoint a special master to assist this Court in fact finding.

Presuming, therefore, the inherent authority of the circuit court to appoint a special master, we note in the present case that the trial court specifically disclaimed any intention to delegate judicial functions to the special master. During the April 23, 1997, hearing regarding the motion to show cause, the Honorable Fred M. Mester emphasized the need for the special master and acknowledged the court's duty not to abdicate judicial responsibilities to the special master:

The Court will also state that the prosecutor in the very beginning of this case—they're the ones that filed the case—it was alleged at the very beginning that there were hundreds of aggrieved individual [sic] who needed immediate attention, immediate access to certain assets of Beckwith Evans because those assets may be dissolved by the actions of the assignee for the benefit of Trustee of Beckwith Evans and the other defendants.

The prosecutor asked for immediate action immediate help by this Court.

The Court advised the prosecutor and the parties at that time that because of the size of this case the prosecutor himself said [he] is going to be involved subject to the notification of each client that was going to be involved; the time that was going to be involved.

The Court said that in order to help the Prosecutor, to help these individuals, claimants of Beckwith Evens [sic] that it would have a special master appointed to assist the Court.·

The Court delegated no judicial function to the special master.

Consistent with this acknowledgment of the trial court's ultimate responsibility, the order appointing the special master in fact provides that the proposed findings of fact and conclusions of law to be drafted by the special master are mere *recommendations* to the court. If either side objects to the recommendations, the trial court is responsible to issue its findings of fact and conclusions of law. With regard to the other tasks of the special master, we find no delegation of judicial authority in view of the oversight and power of review retained by the trial court. Compare *Campbell, supra* at 131.

Therefore, because in the present circumstances the special master's powers are limited and not a delegation of the judicial function and in view of the

general inherent power possessed by the circuit court, we would affirm were it not for the precedentially binding decision of *Carson, supra.* MCR 7.215(H)(2).

Reversed.

HOLBROOK, JR., J., concurred.

J. B. SULLIVAN, J. (*concurring*). I concur with the result reached by the majority, but write separately because I disagree that *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116; 559 NW2d 54 (1996), was wrongly decided. Further, I find the majority's opinion confusing in that it (1) finds that the differences between *Carson* and the case before us are "immaterial," (2) holds that the circuit court has the authority to appoint a special master "as long as the assigned duties do not unduly intrude on the exclusive domain of the court to perform judicial functions," *ante*, 584, (a holding essentially indistinguishable from *Carson*), and yet (3) follows *Carson* only because compelled to by MCR 7.215(H). Finally, I disagree with the majority's ultimate determination, *ante*, 589, that "in the present circumstances the special master's powers are limited and not a delegation of the judicial function . . . ."

In support of its position that it would affirm but for the precedentially binding effect of *Carson*, the majority presents two arguments: first, that "the trial court specifically disclaimed any intention to delegate judicial functions to the special master." *Ante*, 588. However, that disclaimer, made orally by the trial court at a hearing that occurred after entry of the order appointing the special master, is of no effect. It is well settled that courts speak through their written

orders, not their oral statements. *Boggerty v Wilson,* 160 Mich App 514, 530; 408 NW2d 809 (1987).

The majority's second argument is that the proposed findings of fact and conclusions of law were mere recommendations to the court; that if either side objected, the trial court was responsible to issue its own findings of fact and conclusions of law; and that there was no delegation of judicial authority in view of the oversight and power of review retained by the trial court. However, the order (set forth in its entirety as an appendix to this opinion) makes it clear that, absent objections by the parties, the master's findings of fact and conclusions of law would become the judgment of the court. Further, the order does not specify that, in the event of objections, the trial court is responsible to issue de novo its own findings and conclusions of law. Rather, the order is silent regarding the court's role in the event there are objections, leaving the court free to adopt the recommendations notwithstanding objections, order reconsideration by the special master, or take any number of other actions that, advertently or inadvertently, would relieve the court from its obligation to adjudicate the case before it.

While I am extremely sympathetic to the court's rationale for appointing the special master, as set forth in the introductory paragraph of the order, and while the order in this case does not involve quite as comprehensive a delegation of authority to the special master as the authority delegated to the expert witness in *Carson,* the order plainly purports to delegate certain functions and powers that are clearly within the purview of the judiciary. In particular, the order appointing the special master delegated the

duties of making findings of fact and conclusions of
law with respect to the validity, propriety, and
amount of the claims, requiring the production of evi-
dence, conducting and regulating miscellaneous pro-
ceedings, and examining documents and witnesses. In
addition, the special master was to provide the court
with its recommendations and, if the parties did not
object, they would be deemed to have consented to
the entry of an order consistent with those recom-
mendations. By delegating these judicial functions to
a special master, the trial court exceeded its constitu-
tional and statutory authority. See *Carson, supra,*
122-124.

The majority seems to be arguing that *Carson* was
wrongly decided because it prohibits the use of spe-
cial masters at all. This is evidenced by the majority's
citation of various cases, decided before *Carson,*
wherein circuit courts have appointed special masters
to assist them when the circumstances of the case so
justified; by the majority's noting that, while the Mich-
igan Court Rules of 1985 do not expressly authorize
or prohibit the appointment of a special master, the
majority finds that the circuit court does possess
such authority; and by the majority's holding that, as
long as the court's judicial function has not been abdi-
cated, there is no express or implied prohibition to
the appointment. However, the issue in both *Carson*
and in the case before us is not whether the circuit
court has authority to appoint such persons, be they
called special masters, lieutenants, expert witnesses,
amicus curiae, or any other of a number of titles. The
issue is whether the circuit court can delegate judicial
functions to those individuals. As *Carson* so clearly
and correctly points out, the answer is no.

The cases cited by the majority do not dictate a different result. A careful reading of those cases shows that, notwithstanding the appointment of special masters, receivers, or amicus curiae, it was the court that either made the final decision, often following a trial, or was found to have committed error requiring reversal for failure to do so. For example, in *Campbell v Evans*, 358 Mich 128; 99 NW2d 341 (1959), where the trial court rubber-stamped the custody recommendation of the friend of the court, the Supreme Court reversed, stating:

> "While under statutory authority, [circuit courts] are authorized to make use of the friend of the court for detailed home investigation, and to make use of friend of the court referees for preliminary hearings, the circuit judge *cannot delegate his ultimate responsibility in contested cases for the hearing of evidence and the determination of issues.*" [*Id.*, 132 (emphasis added; citation omitted).]

Similarly, while the trial court in *O'Connor v Vander Veen*, 253 Mich 77, 83; 234 NW 101 (1931), appointed a special master to hear claims against a dissolving copartnership, the court ultimately adjudicated the matter, determining that the appellant intervening creditor was a general and not a preferred creditor of the copartnership and that it could not look to its sureties. *Chittenden v Witbeck*, 50 Mich 401; 15 NW 526 (1883), involved a bill for a final settlement of partnership affairs. The case was heard by the trial court using the pleadings and proofs, and the court determined that the complainant retained a large portion of partnership assets, used them without consent of the defendants for private gain, and made large profits. The court then referred the case to a special master to take and state an account of the partner-

ship proceedings and ultimately divide the profits consistent with the court's determination, a situation distinguishable from both *Carson* and the case before us. In *Detroit Trust Co v Mason*, 309 Mich 281, 309; 15 NW2d 475 (1944), relied on by the majority, the duties of the friend of the court were clearly circumscribed "not to make any decision for the court but to obtain other plans and make recommendations, the court reserving to itself the exclusive right to make the final determination"; while acknowledging authority for the appointment of a friend of the court, the Court based its holding on the fact that no objections were made. *Id.*, 310. In *Rockwell v Crestwood School Dist Bd of Ed*, 393 Mich 616, 644-645; 227 NW2d 736 (1975), cited by the majority, the Court was unpersuaded by the union's argument that arbitrators were analogous to special masters, and, in dicta, noted the differences as follows:

> A special master, receiver or monitor exercises the powers conferred upon him subject to the judge's power to substitute his own independent judgment at any time for the judgment of the special master, receiver or monitor unimpeded by the limitations generally pertaining when a court sits in judicial review of an arbitrator's decision.

Rather than contradicting *Carson*, this dicta supports, albeit indirectly, *Carson's* conclusion that judicial authority rests with the court, not with a special master. In *Harper Creek School Dist v LeRoy Twp Supervisor*, 146 Mich App 515; 382 NW2d 172 (1985), the parties stipulated that the cases be consolidated, that the judgment be stayed pending appeal, and that the issue of reasonable costs of summer tax collection by the townships would be determined by a special master. However, it was the court that made the

four dispositive rulings regarding the constitutionality and the requirements of 1982 PA 333. In *O'Dess v Grand Trunk W R Co*, 218 Mich App 694; 555 NW2d 261 (1996), the parties stipulated that a special master be appointed for the purpose of determining whether the plaintiffs' predecessors' deeds conveyed to the defendant's predecessor a fee interest and the nature of that interest. The master made findings of fact only, i.e., that the deeds conveyed a fee simple interest in the property, but the trial court, having adopted those findings, made its ruling of law that, on the basis of a Supreme Court case, the land was not subject to certain statutory deed-back provisions. In short, none of these cases supports the majority opinion that *Carson* was wrongly decided.

Importantly, the majority does not distinguish between the significant authority given *only* to the Supreme Court as opposed to that given to the Court of Appeals and the circuit courts. This is evidenced by the majority's citation of the reapportionment and the *Durant* cases, *Durant v State Bd of Ed*, 424 Mich 364; 381 NW2d 662 (1985), and *Durant v Michigan*, 456 Mich 175; 566 NW2d 272 (1997). Const 1963, art 6, § 5 provides that the "*supreme* court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." (Emphasis added.) Pursuant to this authority, chapter 9 of the Michigan Court Rules (Professional Disciplinary Proceedings) provides that the Attorney Grievance Commission can "direct that the hearing be held before a master to be appointed by the Supreme Court." MCR 9.210. See *Grievance Administrator v August*, 438 Mich 296, 304; 475 NW2d 256 (1991). Similarly, Const 1963, art 6, § 23  provides that the

"*supreme* court may authorize persons who have been elected and served as judges to perform judicial duties . . . ." (Emphasis added.) The apportionment cases and the *Durant* cases, cited by the majority, are distinguishable. The former generally utilize persons appointed by the Supreme Court (see, e.g., *In re Apportionment of the State Legislature—1992*, 439 Mich 251; 483 NW2d 52 [1992]), and the latter deal with the Headlee Amendment, Const 1963, art 9, §§ 25-34, which provides in § 32 that state taxpayers have standing to bring suit in the Court of Appeals. In sum, the authority given to the Supreme Court is both qualitatively and quantitatively different from that given to the circuit court. While the circuit court may appoint various lieutenants, it may not delegate judicial functions or authority to those lieutenants, and *Carson, supra*, correctly so held.

Finally, I would find no merit in appellee's argument that this Court need not review this issue because it may be rendered moot by the adoption of proposed MCR 2.317. As a general rule, this Court does not decide moot issues. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief. *Id.* At the time the order appointing the special master was entered, MCR 2.317 had not been adopted. While proposed MCR 2.317 would authorize the appointment of "discovery masters" to facilitate discovery, there is no indication that the rule is to be applied retroactively. Moreover, even if proposed MCR 2.317 is ultimately adopted and were applied retroactively, the trial court's order appointing a special master in the case before us would still appear to be

overbroad. See proposed MCR 2.317(B). Nor is there merit to appellee's claim that the trial court's appointment is valid under the authority granted in MCR 1.105. If MCR 1.105 is read in such a broad manner, it would grant a court the power to enter *any* order to quickly dispose of a case. Such a broad reading of the rule is contradicted by the Michigan Constitution, which clearly limits a trial court's authority.

I join the majority's opinion to reverse.

### APPENDIX

### ORDER APPOINTING SPECIAL MASTER

This matter comes before the Court upon the Assignment for the Benefit of Creditors of Beckwith Evans, Inc. ("Beckwith Evans") and upon the Complaint (the "Complaint") of the Oakland Prosecutor for determination of claims of violation of the Michigan Consumer Protection Act. Recognizing the urgency of the claims and the fact that they number almost 300, the Court must balance the Prosecutor's request for an immediate resolution with the demands of the Court's extensive civil and criminal docket. The Court has the duty not only to these parties but also to those in the other cases that come before it on a daily basis and it cannot set those aside to resolve this matter. To comply with MCR 1.105 and to meet its duties to all of the citizens of Oakland County, the Court has determined that the best interests of the parties will best be served by the appointment of a special master to assist the Court.

IT IS THEREFORE ORDERED as follows:

1. Geoffrey L. Silverman of the law firm Shefferly & Silverman is hereby appointed as Special Master ("Special Master") to assist the Court as set forth herein and as may be directed by the Court from time to time. The Special Master may delegate certain duties to and receive the assistance of other attorneys and staff members of the firm of Shefferly & Silverman as he may deem necessary or advisa-

ble in performance of his duties and exercise of his powers hereunder.

2. The Special Master shall provide the Court with written recommendations of findings of fact and of conclusions of law with respect to the following:

A. The validity and amount of claims alleged under the Michigan Consumer Protection Act (MCLA 445.901 et seq) [sic] alleging fraud and misrepresentation by and on behalf of Beckwith Evans; and

B. The priority of all claims against the assets of Beckwith Evans, including, but not limited to, those of (i) customers for deposit, (ii) the Assignee for the Benefit of Creditors and those providing services to him pursuant to such assignment, and (iii) others asserting lien claims.

3. The parties hereto shall have fourteen (14) days from and after service of the Special Master's recommendations in order to file and serve any written objections thereto. Absent the timely filing and service of such objections, a party shall be deemed to have consented to the entry of an order adopting and confirming such recommendations.

4. The Special Master shall consult with and advise the Court as the Court may request from time to time.

5. The Special Master may conduct fact-finding inquiries by meeting with the parties by requests for written submissions and/or the taking of oral evidence. The Special Master shall not be required to make rulings as to the admissibility of any evidence or other submissions, but shall note and preserve any and all evidentiary objections.

6. The Special Master may establish schedule(s) for completion of his duties and may direct the parties to meet with him and/or to submit written materials on or by dates certain for the purpose of establishing the procedure to be followed by the Special Master and the parties, the sharing and/or presentation of information and/or evidence, and/or the presentation of oral argument. The Special Master may permit, but is not required to permit, oral argument or oral presentation.

7. The Oakland County Prosecutor is hereby directed to provide the Special Master, the Assignee for the Benefit of Creditors and counsel for Beckwith Evans, within fourteen

(14) days of the date hereof, with a specific statement of the alleged misrepresentation and/or fraud as to each consumer for the benefit of whom the Prosecutor has filed the Complaint. Such statement shall indicate the nature of the alleged misrepresentation and/or fraud and the facts giving rise thereto, including a description of the person (s) (with names, if known) making such statements [sic] the dates upon which such statements or acts were made or taken, and the manner in which the respective consumer relied thereon.

8. The Special Master shall be compensated for his services and the services of other employees of the firm of Shefferly & Silverman based on the time spent on such tasks and calculated at the regular hourly billing rates of such attorneys and other personnel, in effect as of July 1, 1996. The Special Master shall be reimbursed the out-of-pocket expenses reasonably incurred by him and by Shefferly & Silverman in performance of these duties. Such fees and expenses shall be borne equally by the Oakland County Prosecutor and by the Assignee for Benefit of Creditors and shall be due and payable from time to time, immediately upon receipt of detailed invoice(s). As to the Assignee for the Benefit of Creditors, the obligations to pay fees and expenses of the Special Master hereunder shall have priority over any and all other fees, expenses and distributions to be made pursuant to such Assignment.