# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 5, 2010

140130 & (29)(31)(36)


ESTILL GERALD CAUDILL,
        Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
        Defendant-Appellant.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 140130
COA: 294951
Oakland CC: 2008-094413-NF

On order of the Court, the motion for immediate consideration, the motion to file a document under seal, and the motion for leave to file a reply brief are GRANTED. The application for leave to appeal the December 3, 2009 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

KELLY, C.J. (*concurring*).

I concur in the Court's order denying defendant's interlocutory application for leave to appeal. This case involves a lengthy and contentious dispute over discovery. Defendant argues that the trial judge lacked any authority to appoint a master to help manage discovery. A master was appointed in March 2009. In a later order, the judge stated that the master's purpose was to "assist and promote a mutually acceptable settlement of discovery disputes" and made clear that the master had "no authoritative decision making power." The master was merely to make recommendations to the trial court.

Defendant filed a motion for clarification on April 22, 2009. It questioned how the discovery master would be compensated and by what authority the master was appointed. A hearing on the motion was scheduled for July 15, 2009, but no oral argument was placed on the record. Instead, the parties agreed to the entry of an order stating that defendant would produce a chart or grid listing certain documents that plaintiff had requested. The order specified that it would be entered under a protective order of the trial court and was for use by plaintiff only. Defendant did not push for a

resolution of its motion regarding the authority for appointment of the master.  Instead, over the next months, defendant conducted active discovery and behaved as if it had accepted the master's appointment.  It scheduled twenty-nine depositions, started sixteen, and completed fifteen.

In the meantime, defendant never produced the grid as agreed.  When this was brought to the trial judge's attention on August 12, 2009, the judge entered an order requiring defendant to produce the grid within 21 days.  Defendant did not produce the grid within 21 days.  Instead, it sent plaintiff's attorney a letter and a proposed protective order governing the production of the grid.  Plaintiff's counsel refused to sign it because, he asserted, the July 15, 2009, order was a protective order.

The matter went before the trial judge once again on September 30, 2009. The judge agreed with plaintiff that a protective order was already in place and again ordered defendant to produce the grid.   Defendant failed to produce it.  On October 7, 2009, plaintiff filed a motion for entry of a default based on defendant's failure to produce documents, including the grid, as ordered by the court.  At that time, defendant filed a renewed motion for clarification and/or to strike the order appointing the discovery master.

The trial judge seemed displeased with defendant's delays in making discovery and with its repeated violations of the court's orders.  In an October 27, 2009, order, the judge found that defendant had "blatantly ignored" three discovery orders and assessed costs and sanctions against it in the amount of $1,500. Finding it "noteworthy that Defendant's request for clarification and/or to strike comes nearly six months following the appointment of a discovery master[,]" the court denied defendant's motion.

I concur in this Court's decision to deny defendant's interlocutory application for appeal.  Defendant seems intent on obstructing the discovery process.  It waited nearly six months after the appointment of the discovery master to ask the trial court to resolve whether it had authority to appoint the master.  That occurred only after it grew dissatisfied with the way discovery was proceeding.  Thus, it appears that defendant waived its objection to the trial court's authority to make the appointment.  This Court properly declines to allow defendant to harbor the alleged error until after it became dissatisfied with an adverse ruling.[1]

CORRIGAN, J. (*dissenting*).

I dissent from the Court's order denying defendant's application for leave to appeal in what should be a routine first-party no-fault case.  Plaintiff apparently engaged in abusive discovery tactics that the trial court did not control.  Instead, the trial court

---

[1] See *Mitan v New World Television, Inc,* 469 Mich 898 (2003).

delegated its judicial power to a discovery master to review a request for 77,000 pages of documents and make recommendations to the court. The trial court lacked this authority. *Carson Fischer Potts and Hyman v Hyman*, 220 Mich App 116 (1996). Moreover, defendant's objection to the appointment of the master was timely. Finally, the wrongful appointment of a discovery master cannot be corrected after final judgment. Accordingly, I would remand to the Court of Appeals for consideration as on leave granted.

Plaintiff filed this first-party no-fault claim against defendant State Farm, his no-fault insurer, after he was injured in an automobile accident on March 23, 1994. During discovery, plaintiff asked defendant to produce its ACE (Advanced Claims Excellence) program documents. The parties do not describe in detail what types of documents this includes, but the requested material amounts to approximately 77,000 pages of documents. After defendant failed to timely produce the documents, plaintiff moved to compel production of the documents. Defendant responded by moving to strike and seeking a protective order. It objected to the lack of any limitation on the request for production of the ACE documents, and to plaintiff's request for the production of defendant's general claims memos, Auto Claims Manual, and for the personnel files of its employees. On March 18, 2009, after a hearing, the trial court entered a handwritten order stating, "Mark Frankel is hereby appointed special discovery master in this case." On March 30, 2009, the court entered a more detailed order appointing Mark Frankel discovery master, directing him to review the disputed documents *in camera*, and then report to the court with recommendations.

On April 22, 2009, defendant moved for clarification of the trial court's authority to appoint a discovery master. Defendant also pointed out that the order omitted any direction that the discovery master must keep the documents confidential. A hearing on the motion was scheduled for July 15, 2009, but the parties instead agreed to the following order:

> The Court defers hearing on the motion, and because of the volume of the records, Defendant shall produce a chart or grid of potential Michigan ACE documents for Plaintiff's review; and the chart or grid shall be issued under the protective order of this Court, only by and for use of this Plaintiff, only, and not to be revealed to any other parties; and the parties will discuss and present the documents generated to the Court, if agreement cannot be reached.

The parties' attorneys disagree about the nature of the discussions surrounding agreement on this order. Defense counsel claims that the parties discussed the need for a separate protective order. Plaintiff's counsel claims that defense counsel drafted the July 15, 2009 order and said that defendant would produce the grid in about a week.

At an August 12, 2009 hearing on other discovery matters, the trial court learned that defendant had not yet produced the grid. An order entered on that date requiring defendant to produce the grid within 21 days. Instead of producing the grid, defense counsel submitted a proposed protective order concerning production of the grid to plaintiff's counsel. Plaintiff's attorneys contended that the July 15, 2009 order was a protective order and refused to sign defendant's proposed protective order.

On September 15, 2009, defendant moved for clarification regarding whether the court's previous orders contemplated a separate protective order. After a hearing on September 30, 2009, the court ordered that "[t]he order previously entered as a result of State Farm's earlier Motion for Clarification shall be the protective order" but "with the following addition:" that all documents and any copies were to be returned to defendant within 60 days of the termination of the action, along with an affidavit of plaintiff indicating compliance with the protective order.

On October 7, 2009, plaintiff moved for entry of a default on the basis of defendant's failure to comply with the court's orders to produce documents including the ACE grid. Defendant filed a renewed motion for clarification on the same day, arguing that the trial court lacked the authority to appoint a discovery master. On October 27, 2009, the trial court denied plaintiff's motion for entry of a default, denied defendant's motion to strike the order appointing the discovery master, and assessed $1500 in sanctions against defendant. The court also ordered the parties to share the costs of the discovery master on a pro rata basis.

On November 3, 2009, defendant produced the ACE grid. The grid is a 31-page list of 930 documents consisting of over 77,000 pages.

On November 6, 2009, defendant applied for leave to appeal in the Court of Appeals, which was denied for failure to persuade the court of the need for immediate appellate review. After defendant sought leave to appeal in this Court, the trial court stayed the trial court proceedings while this application for leave to appeal is pending, but the trial court also scheduled a status conference for January 29, 2010, in order to reconsider the stay order.

In an introductory section of its application entitled "The Setup," defendant claims that plaintiff's request for documents is part of a plan that "involves using the discovery process primarily as a vehicle for discrediting one's opponent, and possibly obtaining a default so as to avoid having to try a weak case." Defendant claims that this tactic was used against it in a federal case by a law firm with whom plaintiff's attorneys share office space. Defendant also contends that three prior cases were filed in Oakland Circuit Court

on behalf of plaintiff by the same law firm or its predecessors.[2]  According to defendant, plaintiff's claims file is approximately 8,600 pages.

I dissent from this Court's decision to deny defendant's interlocutory application for leave to appeal.  First, controlling case law supports defendant's argument that the trial court had no power to appoint a discovery master.  In *Carson*, 220 Mich App at 121, the trial court authorized an expert witness to "make findings of fact, conclusions of law and a final recommendation and proposed judgment as to the disposition of this matter . . . ."  The Court of Appeals concluded that the trial court's delegation of power violated the Michigan Constitution:

> The judicial branch is provided for in article 6 of our state constitution.  Const. 1963, art. 6, § 1 provides:
>
> > The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.
>
> Further, Const. 1963, art. 6, § 27 provides:
>
> > The supreme court, the court of appeals, the circuit court, or any justices or judges thereof, shall not exercise any power of appointment to public office except as provided in this constitution.

---

[2] A review of Oakland County Circuit Court records confirms that plaintiff filed three prior no-fault cases against defendant in that court and that the same attorney represented plaintiff in all three lawsuits.  1994-478680-NF, 1996-522795-NI, 1998-007489-NF.  In all three lawsuits, plaintiff claimed that defendant failed to pay the full amount of no-fault benefits to which he was entitled under his policy with defendant for injuries arising out of the same March 23, 1994 automobile accident.  In one motion filed in the 1998 lawsuit, plaintiff claimed, "Defendant has at all times failed and refused to pay attendant care benefits for all hours required by Plaintiff at reasonable market rates, requiring Plaintiff to bring suit against Defendant on three separate occasions, including the current litigation, all terminating in the past in Defendant's ultimate payment of additional attendant care benefits on the eve of trial."  Each of the three lawsuits was resolved by stipulation of the parties to orders of dismissal without prejudice pursuant to three separate release agreements.

In Michigan, judicial power is vested in the courts under our state constitution. *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich. 254, 258; 98 NW2d 586 (1959). Although the Supreme Court is empowered by the Michigan Constitution to authorize persons who have been elected and have served as judges to perform judicial duties for limited periods or specific assignments, Const. 1963, art. 6, § 23, there are no constitutional or statutory authorities permitting a circuit court judge the power to appoint a retired judge or any other person to sit as a court in a civil action. *Brockman v Brockman*, 113 Mich App 233, 237; 317 NW2d 327 (1982). Rather, Const. 1963, art. 6, § 27 specifically prohibits such action. In *Brockman*, this Court held that a Wayne Circuit Court judge was without constitutional or statutory authority to appoint a former circuit court judge to sit as the court and try the matter. *Id*., p 237.  [*Carson*,  220 Mich App at 119-120.]

Thus, the Court of Appeals "agree[d] with [the] defendant that there is no constitutional authority for the trial court to delegate specific judicial functions to an 'expert witness.'" *Id*. at 121.

In *Galba v Macomb County Circuit Judge*, unpublished opinion per curiam of the Court of Appeals, issued February 14, 1997 (Docket No. 194185), the Court of Appeals panel followed *Carson* and held that the trial court lacked the authority to appoint a special master to decide a discovery dispute.

The Court of Appeals also followed *Carson* in *Oakland County Prosecutor v Beckwith*, 242 Mich App 579 (2000).  The *Beckwith* court noted that neither MRE 706, cited by the trial court in *Carson*, nor MCR 1.105, cited by the trial court in *Beckwith*, expressly authorizes the appointment of a special master.  *Id*. at 584.  In addition, in both cases, the special master's findings and conclusions were to be *recommendations* to the trial court.  *Id*.  The *Beckwith* court noted, however, that were it not bound by MCR 7.215(H) to follow *Carson*, it "would hold [that] the circuit court possesses the requisite, albeit implicit, authority to appoint a special master as long as the assigned duties do not unduly intrude on the exclusive domain of the court to perform judicial functions."  *Id*. See also *Lindhout v Ingersoll*, 58 Mich App 446, 453 (1975) ("The repeal of the general statute and court rule [authorizing a court to appoint a referee in certain cases] and the specific inclusion of the power in other statutes lead this Court to the conclusion that a referee may be appointed in actions at law only where there is specific statutory authority therefor.")

In *Mitan v New World Television, Inc*., 469 Mich 898 (2003), this Court reversed an unpublished Court of Appeals decision following *Carson*, but we limited our order to the circumstances of that case, where the plaintiffs "requested the appointment of a special master to make recommendations on discovery issues," and failed to "raise[]

issues regarding the appropriateness of that procedure in the circuit court," yet raised several claims of error regarding the appointment of the special master in the Court of Appeals.

Second, the trial court provided no express authority for its order appointing a discovery master. MCR 2.401(C)(1) provides a non-comprehensive list of matters that the court and the attorneys for the parties "may consider" at a pretrial conference. MCR 2.410(A)(1) simply states that all civil cases are subject to alternative dispute resolution processes. MCR 2.410(C), which the court did not cite, provides that "[a]t any time, *after consultation with the parties*, the court may order that *a case be submitted to an appropriate ADR process*." MCR 2.410(A)(2), which the court also did not acknowledge, provides that "[f]or the purposes of this rule, alternative dispute resolution (ADR) means any process designed to resolve a legal dispute *in the place of court adjudication . . .*" (Emphasis added.) The trial court's appointment of a discovery master does not fall under these court rules. The trial court did not "submit[]" the "case" to an ADR process "after consultation with the parties," and the appointment of the discovery master to make recommendations was not "designed to resolve a legal dispute in the place of court adjudication." And although the court's opinion characterized the discovery master's intended role as one of facilitator or mediator, nothing its March 30, 2009 order appointing the discovery master suggested such a role. Instead, that order described the "task/mission" of the discovery master as "conducting an in camera review" of several specific documents and "report[ing] back to the Court with his recommendations regarding Defendant's production of said documents to Plaintiff's counsel."

Third, in 1999, this Court considered and declined to publish for public comment a proposed court rule that would have authorized the use of discovery masters in trial courts. Administrative File No. 97-56. In a letter dated June 19, 1998, the Michigan Judges Association commented on the proposal as follows:

> The reasons for the opposition are we think that this shifts a judicial function from judicial officers to attorneys. The proposal as submitted has a de novo review standard in it so that it appears there is a high potential for duplicative efforts. There are concerns with equal justice, that is this might be utilized by individuals who are more financially capable of using the process than others, thus creating the potential for an appearance of two standards of justice. There are enough remedies available in the court rules to resolve discovery disputes. Many judges feel that by resolving these discovery disputes they have a better feel for the case as it progresses through the docket and helps them to manage the flow of the cases on their docket. The entire process seems to be duplicative of that which is available to litigants.

Fourth, this matter is appropriate for appellate review because, unlike the objecting party in *Mitan*, *supra*, defendant raised and preserved its objection to the appointment of the discovery master in the trial court, and the court addressed defendant's argument in its October 27, 2009 opinion. Defendant preserved its objection to the appointment of the special master by seeking clarification of the trial court's authority to appoint the special master in its motion of April 22, 2009. The court's July 15, 2009 order deferred hearing on defendant's motion, and apparently on any role for the discovery master, pending an attempt by the parties' attorneys to reach an agreement on the ACE documents. After delays in the production of the ACE grid stemming at least in part from disputes over the need for a protective order, defendant renewed its motion for clarification and moved to strike the order appointing the discovery master. Under the circumstances, defendant adequately preserved its objection to the appointment of the special master. The trial court considered the objection sufficiently preserved and addressed defendant's argument that the court lacked the authority to appoint a discovery master in its October 27, 2009 opinion. Moreover, there is no reason to defer appellate review of this issue until the trial court renders its final judgment. An error in the appointment of the discovery master cannot be corrected after discovery is complete.

Fifth, I question the appropriateness of the trial court's decision to assess $1500 in sanctions against defendant. The trial court concluded in its October 27, 2009 opinion that defendant was "subject to a full spectrum of sanctions per the Michigan Court Rules" because it had "blatantly ignored" the court's orders entered on July 15, 2009, August 12, 2009, and September 30, 2009. I agree with defendant that this is an inaccurate description of what occurred. As previously discussed, there was disagreement over whether the July 15, 2009 order contemplated a separate protective order. And while defendant did not produce the grid within the 21 days required by the August 12, 2009 order, it did send plaintiff's attorneys a proposed protective order within that time frame.

The trial court also mischaracterized the September 30, 2009 hearing and order in its October 27, 2009 opinion:

> During the September 30, 2009 hearing date, the Court stated from the bench that Defendant must immediately turn over the ACE grid documents to Plaintiff's counsel. The September 30, 2009 order also reflected that the ACE grid documents must be turned over forthwith.

As defendant correctly points out, the September 30, 2009 hearing and order merely clarified that, despite defendant's request for one, no separate protective order would be entered. Moreover, given the apparently proprietary nature of the requested information, defendant's insistence on a more detailed protective order seems reasonable. Defendant produced the grid only after the trial court entered the October 27, 2009 opinion and order, which threatened additional sanctions including entry of a default judgment if defendant did not produce the ACE grid within 7 days.

Finally, plaintiff has apparently engaged in abusive discovery tactics in this case. The grid defendant has now produced shows that the materials plaintiff has requested in this routine no-fault case amount to approximately 77,000 pages of documents—and this accounts only for the Michigan ACE documents. Plaintiff apparently initially requested defendant's *nationwide* ACE documents, the personnel files of defendant's employees, all of defendant's general claim memos, and defendant's Auto Claims Manual. The relevance of these documents in a routine no-fault case is unclear. The trial court's attempt to control discovery by appointing a discovery master was both inadequate and contrary to binding Court of Appeals case law.[3] By denying defendant's application for leave to appeal, this Court allows the trial court's abuse of discretion to stand and plaintiff's unacceptable discovery tactics to continue.

YOUNG and MARKMAN, JJ., join the statement of CORRIGAN, J.

---

[3] I also question whether it was appropriate for the trial court to order the parties to share the cost of the discovery master when it was plaintiff's massive discovery request that generated the perceived need for the discovery master.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 5, 2010

*Corbin R. Davis*

Clerk

p0302